IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

---

UNITED STATES OF AMERICA

      Plaintiff | CASE NO. 13-50048

VS. | SEPTEMBER 9, 2013

DAVID JOSEPH SAMSON

      Defendant

---

CHANGE OF PLEA HEARING
BEFORE THE HONORABLE JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE
FAYETTEVILLE DIVISION

---

<u>APPEARANCES</u>

MR. KENNETH P. ELSER            FOR THE PLAINTIFF
Assistant U.S. Attorney
414 Parker Avenue
Fort Smith, AR  72901

MR. JOHN B. SCHISLER            FOR THE DEFENDANT
Assistant U.S. Public Defender
3739 Steele Blvd., Suite 280
Fayetteville, AR  72703

---

*Prepared by:*
THERESA SAWYER, CCR
35 East Mountain Street, Room 529-C
Fayetteville, AR  72701
479-444-7876

---

*(Proceedings recorded by Stenomask; transcript produced from dictation)*

1      <u>PROCEEDINGS HELD SEPTEMBER 9, 2013</u>

2

3      THE COURT:  The Court calls up for consideration the

4 case of the United States versus David Joseph Samson.  The

5 matter comes on today to consider a written Plea Agreement and

6 a possible change of plea.

7      Is the United States present and ready to proceed?

8      MR. HINES:  Yes, Your Honor.  Good morning.

9      THE COURT:  Mr. Hines, good morning.

10      Is the defense present and ready to proceed?

11      MS. COMSTOCK:  Yes, Your Honor.  Good morning.

12      THE COURT:  Ms. Comstock, good morning.  Would you and

13 your client come around front, please?

14      MS. COMSTOCK:  Yes, sir.

15      THE COURT:  Good morning, sir.  Now, are you David

16 Joseph Samson?

17      THE DEFENDANT:  Yes, sir.

18      THE COURT:  Mr. Samson, please raise your right hand

19 and be sworn.

20 (THE DEFENDANT WAS DULY SWORN.)

21      THE COURT:  Mr. Samson, are you taking any medicine

22 today for any reason at all?

23      THE DEFENDANT:  Tramadol for my back.

24      THE COURT:  I notice you have a cane.  You seem to be

25 limping here.  Do you have a back problem?

1          THE DEFENDANT:  I've got a broken back.

2          THE COURT:  What?

3          THE DEFENDANT:  A broken back.

4          THE COURT:  You have a broken back.

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Okay.  And the medication you mentioned,

7   is that prescribed by a doctor?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Is it pain medication?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Did you have it this morning?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  All right.  Does that medication affect

14   your ability to know where you are and what you're doing?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  So you believe you know where you are and

17   what you're doing here this morning?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Now, you seem very nervous.  Are you okay?

20          THE DEFENDANT:  Yeah.

21          MS. COMSTOCK:  He is very nervous, Your Honor.

22          THE COURT:  Well, I am, too, but I guess it doesn't

23   show that much.  But are you okay?

24          THE DEFENDANT:  Yes, sir.  I'm okay.

25          THE COURT:  Well, it's important because what we're

1  doing here is kind of important.  I want to make sure you

2  believe you understand where you are and what we're doing here

3  today.

4              THE DEFENDANT:  Yes, sir, I do.

5              THE COURT:  Do you?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Is Ms. Christy Comstock your attorney?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Are you satisfied with her service --

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  -- and advice?

12             THE DEFENDANT:  Very much.  Yes, sir.

13             THE COURT:  Have you had enough time to talk to her

14  about this matter?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Ms. Comstock, are you satisfied that Mr.

17  Samson is not impaired and that he knows where he is and what

18  he's doing?

19             MS. COMSTOCK:  I am, Your Honor.

20             THE COURT:  And have you had enough time to talk to

21  him?

22             MS. COMSTOCK:  We've -- yes.

23             THE COURT:  Now then -- Mr. Samson, do you need to sit

24  down?  Let's pull up a chair there.

25             THE DEFENDANT:  Thank you, sir.

1         THE COURT:  I think it might be helpful if you -- and

2    maybe when you do that, Ms. Comstock, kind of push it forward

3    and pull that mic down.  I think I can hear him fine, but --

4    yeah.  Just slide forward a little bit there.  How's that?  Is

5    that better?

6         THE DEFENDANT:  Yes, sir.

7         THE COURT:  All right.  Now then, Mr. Samson, I

8    understand that you have made an agreement with the United

9    States about this case that I've just called up here, and I want

10   to ask you some questions about your agreement, your

11   understanding of it, and your intentions concerning it.  And you

12   may speak with Ms. Comstock anytime before you answer my

13   questions.  Is that fair?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Now, in looking at the agreement, it has,

16   it looks like, 13 pages in it, and it appears that you signed it

17   on the last page.  Did you?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  Did you read it and go over it carefully

20   with Ms. Comstock before you signed it?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Did anyone threaten you or force you in

23   any way to sign the agreement?

24        THE DEFENDANT:  No, sir.

25        THE COURT:  So you did it voluntarily?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:    Now, in the last paragraph of the

3    agreement, and that's at the bottom of Page 12, I believe -- yes

4    -- there's a Paragraph 28, and it says:  "The defendant and his

5    attorney both acknowledge that this Plea Agreement constitutes

6    the entire agreement of the parties."  Is that right?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Everything's in here?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Not any side agreements or anything like

11   that?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  Okay.  Because I want to be sure I've got

14   the full picture.  It's all in this agreement.  Is that right?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Now, at the first part of the agreement in

17   Paragraph 1 that's over on Page 1, it says that you are

18   intending to plead guilty to Count 1 of an Indictment charging

19   you with being a felon in possession of a firearm.  Is that your

20   intention?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  It goes on to say that you understand that

23   once the government -- once the Court, rather -- has accepted

24   the plea and sentenced you on that plea, you understand the

25   government will move to dismiss the remaining counts of the

 1   Indictment filed against you.  Is that your understanding?

 2              THE DEFENDANT:  Yes, sir.

 3              THE COURT:  Well, Mr. Hines, you have, do you not, a

 4   forfeiture allegation?  And I have a Preliminary Order of

 5   Forfeiture.  Is that forfeiture allegation going to be

 6   dismissed, or what's going to be done with that?

 7              MR. HINES:  I believe it -- it will be, Your Honor.

 8              THE COURT:  But, nonetheless, you'll have the Order of

 9   Forfeiture?

10              MR. HINES:  Yes, sir.

11              THE COURT:  Okay.

12              MR. HINES:  Well, we have the Order of Forfeiture,

13   just --

14              THE COURT:  Sorry?

15              MR. HINES:  It's the rifle and the ammunition, Your

16   Honor.

17              THE COURT:  Okay.  But the forfeiture allegation is

18   going to be dismissed is what --

19              MR. HINES:  Yes, Your Honor.

20              THE COURT:  Is that the way you understand it, Ms.

21   Comstock?

22              MR. COMSTOCK:  It is.

23              THE COURT:  Mr. Samson?

24              THE DEFENDANT:  Yes, sir.

25              THE COURT:  All right.  But you're going to consent to

1   a forfeiture, it looks like, of the weapon.  Is that right?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  All right.  Okay.  Now, back to the

4   agreement.  In Paragraph 2, it says that -- well, that's the

5   forfeit.  You agree to forfeit all your rights and title -- I

6   guess I should have read that first and not wasted that time.

7   But you've gone over Paragraph 2 about that forfeiture with Ms.

8   Comstock?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Okay.  All right.  Look with me then at

11  Paragraph 3.  Now, that, Mr. Samson, reads that you have fully

12  discussed with your counsel the facts of this case and the

13  elements of the offense to which you're going to plead.  Have

14  you?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  It goes on to say that you have committed

17  each of the elements of that offense and that you believe there

18  is a basis to support a plea.  Is that right?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  It says this:  "The following facts are

21  true and undisputed."  And under that, there are several

22  subparagraphs.  Looks like A through E.  Now, in reading over

23  that, Mr. Samson, they appear to contain statements of what

24  happened here that causes you to be charged on this Indictment.

25  Is that what's --

1       THE DEFENDANT:  Yes.

2       THE COURT:  -- in there?

3       THE DEFENDANT:  Yes, sir.

4       THE COURT:  Have you gone over that information in

5  those paragraphs with Ms. Comstock?

6       THE DEFENDANT:  Yes, sir.

7       THE COURT:  Is it all true?

8       THE DEFENDANT:  Yes, sir.

9       THE COURT:  All right, sir.  Look with me -- I don't

10  know whether you have a copy there or not, but over in the body

11  of the agreement, and specifically in Paragraph 10 -- this is

12  over on Page 6 -- it says that you understand that if you plead

13  guilty to Count 1, your punishment could be as much as life

14  imprisonment.

15       THE DEFENDANT:  Yes, sir.

16       THE COURT:  That you will be facing a minimum sentence

17  of 15 years in prison.  Do you understand that?

18       THE DEFENDANT:  Yes, sir.

19       THE COURT:  It also mentions that you understand you

20  could be fined as much as $250,000 or receive a punishment that

21  could include both a term of imprisonment and a fine within

22  those limits we just mentioned.  Do you understand that?

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  Now, there is a reference in that

25  Paragraph 10 to supervised release.  Now, that's a punishment

1    that would follow any term of imprisonment that you might be

2    awarded.   There would be conditions attached to it, some of

3    which are mentioned there in Paragraph 11 of your agreement.

4    Now, while on supervised release, you would be required to

5    comply with those conditions, and if you didn't, if you violated

6    them,  you  could  be  punished  for  that,  perhaps  even  re-

7    imprisoned.  Do you understand that, sir?

8                   THE DEFENDANT:  Yes, sir.

9                   THE COURT:   There is in the agreement a reference to

10   sentencing guidelines.   That's on Page 8.   It's Paragraph 13.

11   And that's important, Mr. Samson, because notwithstanding what

12   is  said  about  the  maximum  punishment,  in  determining  the

13   punishment to be awarded to you, I will need to determine what

14   sentencing guidelines apply in your case and consider them on an

15   advisory basis in fixing the sentence.   Are you aware of that,

16   sir?

17                  THE DEFENDANT:  Yes, sir.

18                  THE COURT:  All right.  Do you have any questions, Mr.

19   Samson, about anything that's in this agreement?

20                  THE DEFENDANT:  No, sir.

21                  THE COURT:   Now, you've read it and you've discussed

22   it?

23                  THE DEFENDANT:  Yes.

24                  THE COURT:  And you believe you understand it?

25                  THE DEFENDANT:  Yes, sir.

1    THE COURT:  Any objection to tentative approval, Mr.
2 Hines?

3    MR. HINES:  No, Your Honor.

4    THE COURT:  Ms. Comstock?

5    MS. COMSTOCK:  No, Your Honor.

6    THE COURT:  Very well.  Without objection, the Court
7 expresses tentative approval of the Plea Agreement.  I will hand
8 it down to you, Ms. Garner.  Please let it be filed.  It will be
9 reconsidered at the time of sentencing and finally approved at
10 that time if there are no problems then appearing with it.

11    Now, Mr. Samson, I'm confident Ms. Comstock has told
12 you that in federal court, there is no parole.  So if you are
13 sentenced to serve time in prison, there is no parole.  Do you
14 understand that?

15    THE DEFENDANT:  Yes, sir.

16    THE COURT:  All right, sir.  Well, you hesitated a
17 little bit, but do you understand that?  Do you need some time
18 to talk about it?

19    THE DEFENDANT:  How come there ain't no parole?

20    THE COURT:  Sir?

21    THE DEFENDANT:  How come there ain't no parole?

22    MS. COMSTOCK:  Judge, I think that Mr. Samson doesn't
23 understand why there isn't parole, but we've talked about it
24 extensively and talked about good -- good time served and --

25    THE DEFENDANT:  Okay.

1          MS. COMSTOCK:  -- what may be available to him in
2    prison.

3          THE COURT:  Well, I'm not sure that I understand it
4    either.  I have a notion about it, but there isn't any parole.
5    So we need to understand that.  And you do?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Now also, had you not made the agreement
8    we've just talked about, you would have the right to continue
9    with your not guilty plea and require the government to prove
10   your guilt to a jury beyond a reasonable doubt.  You have that
11   right if you don't agree to do otherwise.  Do you understand
12   that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Now, if you do plead guilty and I accept
15   your plea, then you'll be found guilty just as though you had
16   had the trial in front of a jury.  There wouldn't be any
17   difference in the outcome.  Do you understand that?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Do you have any question about any of
20   that?

21         THE DEFENDANT:  No, sir.

22         THE COURT:  I'm going to ask Mr. Hines now to relate
23   on the record the basis for this charge against you.  Please
24   listen carefully because I'll have questions of you when he
25   finishes.

1          Mr. Hines, if you please, sir.

2          MR. HINES:   Thank you, Your Honor.   On or about

3   September 25th, 2012, Fayetteville police observed the defendant

4   driving  erratically  and  swerving  on  North  College  Avenue.

5   Officers stopped the vehicle and noticed the defendant breathing

6   heavily and sweating profusely.   Officers noticed a rifle in

7   plain  view  on  the  floorboard  of  the  backseat.   A dispatch

8   informed officers the defendant had multiple felony convictions.

9          The rifle was a Marlon brand 22 caliber and did not

10  have  a  serial  number  on  it.   The  defendant  was  arrested  and

11  transported to the Washington County Detention Center.   Agents

12  from the Bureau of Alcohol, Tobacco, and Firearms, ATF, analyzed

13  the rifle recovered from the defendant's vehicle and determined

14  it   was   manufactured   outside   the   state   of   Arkansas   and,

15  therefore, traveled in interstate commerce.

16         A search of the defendant's criminal history revealed

17  that he was convicted in 1996 of assault with a deadly weapon in

18  California, convicted in 2001 of felony burglary in Oregon, and

19  convicted in 2011 of felony unlawful use of a weapon in Oregon.

20         The government could prove the facts set forth above

21  based on defendant's admissions and based on independent law

22  enforcement investigation.

23         THE COURT:  Ms. Comstock, do you believe that if the

24  information just related by Mr. Hines were presented to a jury,

25  and the jury believe it, that it could be sufficient to support

1    a finding of guilt beyond a reasonable doubt on the charge?

2         MS. COMSTOCK:  I believe it could.

3         THE COURT:  Now then, Mr. Samson, did you follow what

4    Mr. Hines related?

5         THE DEFENDANT:  Yes, sir.

6         THE COURT:  I was looking at a copy of your agreement

7    when he spoke, and it appears he basically related what's in

8    Paragraph 3.  You earlier told me that is all true.  Now that

9    you've heard it, do you still agree that it's true?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  All right.  Let's review briefly, Mr.

12   Samson, where we've been.  I've wanted to be sure, by my

13   questions about a number of things, one, that you're okay.

14        THE DEFENDANT:  Yeah.

15        THE COURT:  You know where you are and --

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  -- what you're doing.

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  And that you're satisfied with your

20   attorney and have had enough time to talk this over with her.

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  That you understand the agreement that

23   you've made, that you made it voluntarily, weren't forced to do

24   it.

25        THE DEFENDANT:  Yes, sir.

1      THE COURT:   And that there is a proper basis to
2 support the charge against you.   I wanted to make sure you
3 understand how your punishment would be determined with
4 sentencing guidelines and the like and what it could be, what
5 the maximums are and mandatory minimums and so forth.   I'm
6 satisfied in all the areas that I've asked about.   Now, before
7 I ask, though, for your plea, do you have any question you want
8 to ask of me about any of these things?

9      THE DEFENDANT:   No, sir.

10      THE COURT:   I then ask you, sir, how do you plead to
11 the charge set out in the Indictment, guilty or not guilty?

12      THE DEFENDANT:   Guilty, Your Honor.

13      THE COURT:   That's Count 1 of the Indictment.   All
14 right.   Then in this case of the United States versus David
15 Joseph Samson, the Court finds that the defendant is fully
16 competent and capable of entering a voluntary and informed plea,
17 that he has knowingly and voluntarily signed a Plea Agreement
18 acting on the advice of his counsel with whom he is well
19 pleased, that he is aware of the nature of the charge brought
20 against him in Count 1 and of the consequences of a plea of
21 guilty to it, that his plea of guilty to Count 1 is knowingly
22 and voluntarily made, and that it is supported by an independent
23 basis in fact containing each of the essential elements of the
24 offense therein charged.

25      Accordingly, the plea is accepted and the defendant is

1   adjudged to be guilty of the charge laid out in Count 1.

2        Mr. Samson, prior to our next hearing, which I believe

3   will be the sentencing hearing, there will need to be a pre-

4   sentence investigation by the U.S. Probation Office. That'll be

5   done, I believe, by Mr. Trent Thompson. Is that right?

6        MS. BROWN: Yes, Your Honor.

7        THE COURT: Who's not here, but he will do the

8   investigation. His purpose will be to gather the information

9   that I need to determine what sentencing guidelines apply in

10   your case and also information that should be helpful in

11   determining what the proper sentence ought to be in the case.

12   So it's important that Mr. Thompson get complete and accurate

13   information. I would encourage you to cooperate with him and

14   talk with him. Ms. Comstock will advise you about whether you

15   should or should not do that.

16        As soon as he has completed his investigation, he will

17   prepare a written Pre-sentence Investigation Report. It'll be

18   provided to you, Mr. Samson, so please go over it carefully. If

19   you find anything in it that you believe is incorrect, let Ms.

20   Comstock know and she will take appropriate action to address

21   whatever concern that you might have. As soon as you've had

22   enough time to review the report and get prepared for the

23   hearing, we will have the sentencing hearing, and at that time

24   the sentence will be determined and pronounced.

25        Now, counsel, I have the Preliminary Order of

1  Forfeiture that I've alluded to earlier and I have reviewed it.

2  It looks to me to be in order.

3       Mr. Samson, did you see that?  Looks like you did

4  because you signed it.

5       THE DEFENDANT:  Yes, sir.

6       THE COURT:  All right.  Ms. Comstock, are you

7  comfortable with it?

8       MS. COMSTOCK:  Yes.  Mr. Samson --

9       THE COURT:  And Mr. Hines?

10      MR. HINES:  Yes, Your Honor.

11      MS. COMSTOCK:  Mr. Samson has to give up that gun.

12  That's the purpose of it, so we do agree.

13      THE COURT:  Well, I understand, maybe, how you feel,

14  Mr. Samson, but when you have a felony conviction, that makes it

15  inappropriate for you to have a weapon.  You do understand that,

16  don't you, sir?

17      THE DEFENDANT:  Yes, sir.

18      THE COURT:  All right.  Well, this, I believe, is the

19  9th of September, right?

20      MS. BROWN:  Yes, sir.

21      THE COURT:  And so I will sign off on the Preliminary

22  Order of Forfeiture that all have approved and hand it to you,

23  Ms. Garner, for filing, please.

24      Counsel, I have a Release Status Report concerning Mr.

25  Samson from the probation office.  It indicates that Judge

1  Setser ordered that he be detained on May 17, and that
2  apparently is his current status.   Any comments on that, Mr.
3  Hines?

4           MR. HINES:  No, Your Honor.

5           THE COURT:  Any comments on it, Ms. Comstock?

6           MS. COMSTOCK:  No, Your Honor.

7           THE COURT:  It would appear, Mr. Samson, in light of
8  what I see here and the plea that you've made, that it will be
9  necessary to continue the detainment in accordance with Judge
10 Setser's order, so that will be the Court's order.

11          Now, counsel, if, prior to the sentencing hearing --
12 well, if you intend at the sentencing hearing to rely upon or
13 argue any legal authorities, please provide the Court with
14 Briefs at least three days ahead of the hearing so I can have a
15 chance to see what's on your mind before we come to the hearing.

16          Anything further in this case at this time, Mr. Hines?

17          MR. HINES:  No, Your Honor.

18          THE COURT:  Anything further, Ms. Comstock?

19          MS. COMSTOCK:  No, Your Honor.

20          THE COURT:  Well, Mr. Samson, I will then remand you,
21 sir, to the custody of the Marshals Service to await the
22 sentencing hearing.

23          This concludes this hearing.   We are adjourned.

24 (WHEREIN THE HEARING WAS CONCLUDED.)

25

## COURT REPORTER'S CERTIFICATE

I, THERESA SAWYER, do hereby certify that the foregoing is a true and correct transcript from the record of proceedings in the above-entitled matter.

_/S/_ Theresa Sawyer

THERESA SAWYER
CERTIFIED COURT REPORTER, #235
TRANSCRIBER

FEBRUARY 11, 2014
(DATE)