UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.   5:13CR50048-001 |
| | ) | |
| DAVID JOSEPH SAMSON | ) | |

**AMENDED MOTION FOR RELIEF UNDER 28 U.S.C. § 2255**

Comes now the Petitioner, David Joseph Samson, and respectfully requests this Court grant him relief under 28 U.S.C. § 2255. Based on the application of *Johnson v. United States*, 135 S.Ct. 2551 (2015), Mr. Samson's sentence must be vacated and the case set for *de novo* sentencing. In addition, Mr. Samson was provided ineffective assistance of counsel during the plea bargaining phase of his case. A detailed explanation of the constitutional violation and the relief sought is provided in the attached memorandum.

Respectfully submitted,

BRUCE D. EDDY
FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF ARKANSAS

By:   /s/ *Anna M. Williams*
Anna M. Williams ABN 2013224
Assistant Federal Public Defender
3739 Steele Blvd., Suite 280
Fayetteville, Arkansas 72703
Telephone: (479) 442-2306

Counsel for Petitioner

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.   5:13CR50048-001 |
| ) | |
| DAVID JOSEPH SAMSON ) | |

**MEMORANDUM IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255**

**I. MR. SAMSON'S PETITION IS TIMELY**

Under 28 U.S.C. § 2255(f)(3), the one-year statute of limitations for seeking habeas relief runs from "the date on which the right asserted was initially recognized by the Supreme Court." On June 26, 2015, the Supreme Court decided *Johnson v. United States*, 135 S.Ct. 2551 (2015), which recognized the residual clause of the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e), violates due process and is unconstitutionally vague. Therefore, Petitioner David Joseph Samson has one year, or until June 26, 2016, to file for relief under 28 U.S.C. § 2255. Accordingly, the instant motion is filed within the one-year statute of limitations and is timely.  Further, as to his claim for ineffective assistance of counsel, his § 2255 Motion was timely filed. When a convicted person files and then voluntarily dismisses an appeal from a conviction, the date of finality is computed by adding 90 days (the time within which a petitioner can petition for writ of certiorari) to the date the appeal is dismissed. *See Latham v. United States*, 527 F.3d 651, 652 (7th Cir. 2008).

**II. BACKGROUND**

On April 24, 2013, Mr. Samson was charged in a four-count indictment in the Western District of Arkansas. Mr. Samson was charged with one count of unlawful possession of a firearm

1

by a convicted felon (Count One), in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2); one count of possession of falsely made, forged and counterfeit Federal Reserve Notes (Count Two), in violation of 18 U.S.C. § 472; and two counts of knowingly and intentionally using a cell phone in committing, causing or facilitating a felony drug offense (Counts Three and Four), in violation of 21 U.S.C. § 841(a)(1), § 846 and 21 U.S.C. § 843(b).

On September 9, 2013, Mr. Samson appeared before the Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas, for a change of plea hearing as to Count One of the Indictment. Christy Comstock was present to represent Mr. Samson. A written plea agreement outlining the minimum and maximum penalties was presented to the Court. (Doc. 15). The plea agreement specifically listed Mr. Samson's prior convictions for assault with a deadly weapon in California, burglary in Oregon, and unlawful use of a weapon in Oregon—the three offenses later used as the predicate felonies under the ACCA enhancement. *Id.* at 3. At the change of plea hearing, Judge Hendren emphasized the mandatory minimum penalty contained in the plea agreement and asked if Mr. Samson understood that he faced a mandatory minimum of 15 years imprisonment. (Doc. 33, p. 9). Mr. Samson acknowledged that he understood this. *Id.*

The initial Presentence Investigation Report ("PSR") was filed on November 26, 2013, and it provided for an enhancement under the ACCA. Ms. Comstock filed an objection to the enhancement, arguing that commercial burglary did not qualify as a predicate felony. The probation office clarified that it did not rely on the commercial burglary offense, but instead upon Mr. Samson's convictions for assault with a deadly weapon, residential burglary, and unlawful use of a weapon. Ms. Comstock withdrew the objection in open court at Sentencing. (Doc. 34, p. 7). On January 16, 2014, the Court sentenced Mr. Samson to 180 months' imprisonment, the mandatory

minimum sentence after applying the ACCA enhancement.

Mr. Samson filed a notice of appeal to the Eighth Circuit Court of Appeals on January 28, 2014, contending that he was improperly sentenced under the ACCA. The sole issue on appeal was whether the residual clause of the ACCA was unconstitutionally vague. On July 11, 2014, Mr. Samson filed a *pro se* motion to dismiss both Ms. Comstock as counsel and his appeal, requesting that Ms. Comstock be removed as counsel because he did not wish to appeal his case. *See* Eighth Circuit Case No. 14-1384. Ms. Comstock subsequently moved to dismiss the appeal on Mr. Samson's behalf and the dismissal was granted on July 17, 2014.

On August 27, 2015, a letter sent to the court by Mr. Samson was filed as a Motion to Vacate under 28 U.S.C. § 2255. In this filing, he requested guidance from the court as to whether his ACCA-enhanced sentence would be reviewed by the Court following the *Johnson* decision. The Honorable Erin L. Setser, Magistrate Judge for the Western District of Arkansas, directed Mr. Samson to complete a Motion to Vacate, in which he also made various claims for ineffective assistance of counsel.[1]

On September 8, 2015, Mr. Samson filed a motion to appoint counsel (Doc. 43) and undersigned counsel was subsequently appointed by the Court.

---

[1]Counsel researched the issues regarding Mr. Samson's ineffective counsel claims and searched the record, including the transcripts for the change of plea hearing and the sentencing hearing, and was unable to ascertain any meritorious claims other than counsel's failure to inform Mr. Samson of the likely consequences of pleading guilty as opposed to standing trial as discussed below. However, counsel requests that the Court permit Mr. Samson to file a *pro se* supplemental brief asserting these claims.

### III. LAW AND ARGUMENT

**A. Because two of Mr. Samson's predicate offenses fell within the residual clause of the ACCA, his sentence must now be vacated and the case set for a *de novo* sentencing.**

The ACCA created an enhanced penalty for criminal defendants who are convicted of violating 18 U.S.C. § 922(g) and who had at least three prior convictions that fell into one of two categories. Prior convictions qualified as predicate offenses for the ACCA if they were serious drug offenses or violent felonies as defined by statute. *See* 18 U.S.C. § 924(e). A violent felony was defined in three different ways: 1) an offense that has as an element the use, attempted use, or threatened use of physical force against the person of another; 2) generic burglary, arson, or extortion, or a crime involving the use of explosives; or 3) an offense that otherwise involves conduct that presents a serious potential risk of physical injury to another. 18 U.S.C. § 924(e)(2)(B).

On June 26, 2015, the Supreme Court decided *Johnson v. United States*, 135 S.Ct. 2551 (2015). Under 18 U.S.C. § 924(e)(2)(B)(ii)—the residual clause of the ACCA—a prior conviction is a "violent felony" if it created a serious potential risk of physical injury to another. The *Johnson* Court held that the residual clause of the ACCA was unconstitutionally vague because it "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 2557. The residual clause "leaves grave uncertainty about how to estimate the risk posed by the crime," as well as "how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. As a result, imposing an increased sentence under the residual clause of the ACCA violates the constitutional guarantee of due process. *Id.* at 2563.

Mr. Samson was sentenced on January 16, 2014, for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). His PSR revealed that he had at least three qualifying predicate

offenses for the ACCA. These offenses were specifically identified as assault with a deadly weapon, in San Bernardino, California in 1986, case number SCR42940; first-degree burglary in Douglas County, Oregon in 2001, case number 01CR0112FE; and unlawful use of a weapon in Douglas County, Oregon in 2011, case number 10CR2516FE. (Doc. 22, p. 7). Mr. Samson recognizes that his conviction for assault with a deadly weapon has been determined by the Ninth Circuit to be a crime of violence under the force clause, at least within the context of immigration.[2] It is immaterial that his assault charge may be a qualifying offense because his remaining felonies no longer qualify as predicate felonies for the ACCA enhancement, and therefore he does not have three predicate felonies to trigger the enhancement.

**1. First-Degree Burglary, Douglas County Circuit Court, Case Number 01CR0112FE**

In 2011, Mr. Samson was convicted of first-degree burglary in Douglas County Circuit Court, Roseburg, Oregon, Case Number 01CR0112FE. In that case, Mr. Samson pleaded guilty to one count of first-degree burglary, in violation of Or. Rev. Stat. § 164.225.[3] Because Oregon's first-degree burglary statute only qualifies as a violent felony under the residual clause, this conviction is no longer a violent felony post-*Johnson*.

When determining whether a state-law conviction qualifies as a violent felony, sentencing courts must look "to the statutory definitions of the prior offenses, and not to the particular facts

---

[2] The Complaint in the assault with a deadly weapon charge provides that Mr. Samson used a handgun, indicating that he was charged under Cal. Penal Code § 245(a)(2). In *United States v. Heron-Salinas*, the Ninth Circuit determined that "[t]he use of a firearm in the commission of the crime is enough to demonstrate that actual force was attempted or threatened under [18 U.S.C. §] 16(a)." 566 F.3d 898, 899 (9th Cir. 2009). Although Mr. Samson was charged under the ACCA and not section 16, the language is identical.

[3] The Judgment does not point to a specific subsection of the statute.

5

underlying those convictions." *United States v. Pate*, 754 F.3d 550, 554 (8th Cir. 2014) cert. denied, 135 S. Ct. 386 (2014) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)). This so-called categorical approach "focus[es] on the elements, rather than the facts, of a crime," and it compares those elements with the elements of the generic offense. *Descamps v. United States*, 133 S. Ct. 2276, 2285, reh'g denied, 134 S. Ct. 41 (2013); *United States v. Olsson*, 742 F.3d 855, 856 (8th Cir. 2013). Only in a narrow range of cases may a sentencing court consider the underlying "trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Pate*, 754 F.3d at 554 (citing *Johnson v. United States*, 559 U.S. 133, 144 (2010)). This modified categorical approach, on the other hand, may be used only "when a prior conviction is for violating a so-called 'divisible statute'" which "sets out one or more elements of the offense in the alternative." *Descamps*, 133 S.Ct. at 2281. Moreover, the label a state uses for a crime does not control whether the crime fits the generic definition. *Taylor*, 495 U.S. at 599.

The first-degree burglary statute in effect in Oregon at that time of Mr. Samson's conviction does not contain an element of the use, attempted use, or threatened use of force. *See* Or. Rev. Stat. § 164.225. To fall within the force clause, the offense must have an element of physical force. 18 U.S.C. § 924(e)(2)(B)(i). "The phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. The Oregon first-degree burglary statute provides that:

> A person commits the crime of burglary in the first degree if the person violates ORS 164.215[4] and the building is a dwelling, or if in effecting the entry of while in a building or in immediate flight therefrom the person:
>
> (a) Is armed with a burglar's tool as defined in ORS 164.235 or a deadly weapon; or
>
> (b) Causes or attempts to cause physical injury to any person; or
>
> (c) Uses or threatens to use a dangerous weapon.

Or. Rev. Stat. § 164.225. Thus, a person may violate the statute without employing any threat of force by sneaking into a home when no other person is present. Thus, to qualify as a violent felony, Oregon first-degree burglary must meet the generic definition of burglary, as the residual clause is now unconstitutional.

According to the Ninth Circuit, Oregon first-degree burglary does not qualify as generic burglary. A state conviction qualifies as a predicate burglary offense if it has "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599. *See United States v. Mayer*, 560 F.3d 948, 959 (9th Cir. 2009) (finding Oregon's first-degree burglary statute proscribes conduct broader than the Supreme Court's definition of generic burglary). In *Mayer*, the Ninth Circuit found that the Oregon burglary statute, unlike the generic definition, was not limited to buildings or structures, but included booths, vehicles, boats, and aircraft. *Id.* at 959 (citing Or. Rev. Stat. § 164.205(1)). Instead, the Ninth Circuit held that this offense fell within the ACCA's residual clause because it posed a "serious potential risk of physical injury to people present in a dwelling at the time of the burglary." *Id.* at 963. Thus, this conviction was classified as a violent felony under the now-defunct residual clause. *See also*

---

[4]Or. Rev. Stat. § 164.215 is the second-degree burglary statute, which is violated when a person "enters or remains unlawfully in a building with intent to commit a crime therein."

*United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (finding Oregon second-degree burglary was defined more broadly than generic burglary under the ACCA because it included any "*booth, vehicle, boat, aircraft* or other structure adapted for overnight accommodation of persons or for carrying on business therein").

Because Oregon's first-degree burglary statute fails the categorical approach as to generic burglary, the final inquiry is whether Mr. Samson's prior burglary conviction nevertheless satisfies the generic definition under the modified categorical approach. *See Taylor*, 495 U.S. at 602. In this case, neither the judgment nor the felony information point to the particular subsection of the statute to which Mr. Samson was convicted. As Mr. Samson's first-degree burglary conviction could only constitute a violent felony under the residual clause, it no longer qualifies as a predicate offense for the ACCA after *Johnson*.

**2. Unlawful Use of a Weapon, Douglas County Circuit Court, Case Number 10CR2516FE**

The last predicate offense used to qualify Mr. Samson as an armed career criminal was his unlawful use of a weapon conviction on January 19, 2011 in Douglas County Circuit Court, Roseburg, Oregon, Case Number 10CR2516FE. In that case, Mr. Samson pleaded guilty to unlawful use of a weapon, in violation of Or. Rev. Stat. § 166.220. The judgment does not point to the specific subsection of the statute Mr. Samson was charged with violating. Because the statute includes both conduct that qualifies as a violent felony and conduct that falls under the residual clause, and it cannot be ascertained from the court documents which subsection of the statute Mr. Samson violated, this conviction can no longer be considered a violent felony post-*Johnson*.

Oregon's unlawful use of a weapon statute provides that:

(1) A person commits the crime of unlawful use of a weapon if the person:

> (a) Attempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015; or
>
> (b) Intentionally discharges a firearm, blowgun, bow and arrow, crossbow or explosive device within the city limits of any city or within residential areas within urban growth boundaries at or in the direction of any person, building, structure or vehicle within the range of the weapon without having legal authority for such discharge.

Or. Rev. Stat. § 166.220. This statute does not qualify as a violent felony under 18 U.S.C. § 924(e). For a conviction to fall within the force clause, the offense must contain "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

The Ninth Circuit has held that a conviction under subsection (1)(b) of Oregon's unlawful use of a weapon statute qualified as a violent felony only under the residual clause of the ACCA. In *United States v. Bautista*, the court held that a conviction under Or. Rev. Stat. § 166.220(1)(b) was categorically a crime of violence because it involves conduct that presents a serious potential risk of physical injury to another pursuant to U.S.S.G. § 4B1.2(a)(2).[5] 229 F. App'x 663, 665 (9th Cir. 2007). Thus, it can no longer constitute a violent felony on the basis of the now-void residual clause. *See Johnson*, 135 S.Ct at 2563. Because the court documents do not point to the particular subsection

---

[5]"The definition of 'crime of violence' in U.S.S.G. § 4B1.2(a) is nearly identical to the definition of 'violent felony' in 18 U.S.C. § 924(e)(2)(B)," and the two are treated as "interchangeable." *United States v. Craig*, 630 F.3d 717, 723-24 (8th Cir. 2011) (citing *United States v. Clinkscale,* 559 F.3d 815, 817 (8th Cir. 2009)); *see, e.g., United States v. Bell,* 445 F.3d 1086, 1090 (8th Cir. 2006) ("Though [Congress and the Sentencing Commission] used different operative terms, crime of violence and violent felony, in this context the two terms should have the same meaning, both as a matter of statutory construction and to avoid sentencing disparity.").

of the statute that Mr. Samson violated, this conviction can no longer a qualify as a predicate offense for the ACCA because it encompasses conduct that falls solely under the now unconstitutional residual clause. *See, e.g., United States v. Ossana*, 638 F.3d 895, 899 (8th Cir. 2011) (employing modified categorical approach when the statute encompasses multiple different crimes, only some of which qualify as crimes of violence).

Before determining whether a violation of Or. Rev. Stat. § 166.220 is categorically a violent crime, a court must first determine whether it is divisible. Because the statute is written in the disjunctive, and under Oregon law, it "presents alternative ways in which a person can commit the crime: by attempting to use a deadly weapon unlawfully, or by carrying or possessing a deadly weapon with intent to use it unlawfully," *State v. Alvarez*, 246 P.3d 26 (2010), it is divisible, *Descamps*, 133 S.Ct. at 2285. "In other words, section 166.220[] effectively creates [] different crimes, each with a distinct set of elements: (1) attempting to use a deadly weapon unlawfully against another (the 'attempt offense'), and (2) carrying or possessing a deadly weapon with intent to use it unlawfully (the 'possession offense')" under subsection (1)(a), *United States v. Willis*, 795 F.3d 986, 995 (9th Cir. 2015), as well as the separate crime of intentionally discharging a firearm or other device unlawfully under subsection (1)(b). While the Ninth Circuit has ruled that subsection (1)(a) qualifies as a predicate felony under the force clause, *id.*, it has determined that subsection (1)(b) only qualifies under the residual clause. *See Bautista*, 229 F. App'x. at 665 (holding a conviction under 166.220(1)(b) is categorically a crime of violence because it involves conduct that presents a serious potential risk of physical injury to another); *see also United States v. Terry-Crespo*, 356 F.3d 1170, 1178 (9th Cir. 2004) (same) (within the context of U.S.S.G. § 2K2.1(a)(4)(A)).

Oregon's unlawful use of a weapon statute does not fall categorically under the force clause because it potentially punishes crimes that do not involve force. As discussed above, to fall within the force clause, the offense must have as an element the use of physical force against the person of another. 18 U.S.C. § 924(e)(2)(B)(i). This is not an element of Or. Rev. Stat. § 166.220(1)(b), which involves discharging a firearm or other device without legal authority to do so without requiring that such discharge be directed at any person. Oregon's unlawful use of a weapon statute as a whole does not require violent force against another person.

The Judgment, the only court document provided by the Oregon court, does not point to a particular section of the statute. "If the state law punishes more conduct than violent force capable of causing physical harm to a person, a conviction under that state law cannot constitute a crime of violence under the . . . force clause." *See United States v. Litzy*, No. 3:15-00021, 2015 WL 5895199 (S.D. W.Va. Oct. 8, 2015) (quoting *United States v. Shell*, 789 F.3d 335, 388 (4th Cir. 2015)). Because Oregon's unlawful use of a weapon statute punishes more than just violent force capable of causing physical harm to another person, it cannot be considered a violent felony under the force clause. In addition, unlawful use of a weapon is not one of the enumerated offenses. Therefore, as Or. Rev. Stat. § 166.220 as a whole does not fall within the force clause or the enumerated offenses, it is no longer a qualifying predicate under 18 U.S.C. § 924(e).

Because *Johnson* invalidated the residual clause as unconstitutionally vague, Mr. Samson's prior convictions for burglary and unlawful use of a weapon no longer qualify as ACCA predicates. Without these predicates, Mr. Samson does not qualify as an armed career criminal under 18 U.S.C. § 924(e). Even if the government disputes one of these predicates, the ACCA statute requires at least

11

three predicate offenses. Without three remaining predicate offenses this Court must vacate Mr. Samson's sentence and order a *de novo* sentencing without the enhancement imposed by the ACCA.

The Court found Mr. Samson to be an armed career criminal and sentenced him based on the enhancement. Mr. Samson's ACCA offense level was 33. (*See* Doc. 22, ¶ 36). After a three-level reduction for acceptance of responsibility, Mr. Samson's adjusted offense level was 30 and his criminal history category was at VI, resulting in a sentencing range of 180 to 210 months. *See* id, ¶¶ 56, 92. The Court sentenced Mr. Samson to 180 months in prison based on this guideline range. Had the ACCA not been imposed in Mr. Samson's case, his total offense level after the three-point reduction for acceptance of responsibility would have been 21 with a criminal history category VI, and therefore his guideline sentencing range would have been 77 to 96 months—a significantly lower range.

A defendant is entitled to have his sentence vacated when that sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). In light of *Johnson*, a criminal defendant such as Mr. Samson who received an enhanced sentence under the residual clause of the ACCA received an unconstitutional sentence, as the residual clause is void for vagueness.

**B. Ineffective Assistance of Counsel.**

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his lawyer's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Proving that counsel was deficient "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance

must be highly deferential." *Id.* at 689. Proving that the deficient performance prejudiced the defense requires proving that there is a reasonable probability that, but for defense counsel's mistakes, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The *Strickland* test also applies to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockart*, 474 U.S. 52, 57 (1985). When the claim of ineffective assistance of counsel arises out of the plea process, the prejudice element "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59.

**1. Counsel failed to inform Mr. Samson of the relevant circumstances and consequences of pleading guilty as opposed to going to trial.**

Mr. Samson contends that Ms. Comstock did not adequately inform him of the consequences of pleading guilty as opposed to standing trial. There was no reasonable communication between Ms. Comstock and Mr. Samson regarding the objectives of his case. Therefore, in contradiction to the Arkansas Rules of Professional Conduct, Ms. Comstock failed to provide the information Mr. Samson needed to make an informed decision regarding his case. Under the Arkansas Rules of Professional Conduct:

> (a) A lawyer shall:
>
> > (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules
> >
> > (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
> >
> > (3) keep the client reasonably informed about the status of the matter;

      (4) promptly comply with reasonable requests for information; and

      (5) consult when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

ARK. RULES OF PROF'L CONDUCT R. 1.4.

Ms. Comstock advised Mr. Samson from the beginning that he must plead guilty and did not present him with the option of going to trial. Ms. Comstock stressed that proceeding to trial would result in a significantly harsher sentence and effectively pushed him into pleading guilty. Because he relied on Ms. Comstock's advice, he entered the plea agreement upon the belief that pleading guilty to being a felon in possession of a firearm, which in turn carried the ACCA enhancement, was his only option. Therefore, he was unable to make an informed decision regarding whether to plead guilty or proceed to trial.

"[C]riminal justice today is for the most part a system of pleas, not a system of trials. . . . the right to adequate assistance of counsel cannot be defined or enforced without taking account of the central role plea bargaining plays in securing convictions and determining sentences." *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012) (internal citations omitted). Because of "[t]he reality [] that plea bargains have become so central to the administration of the criminal justice system . . . ," *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012), the Supreme Court has recognized that the Sixth Amendment right to counsel "extends to the plea-bargaining process. During plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler*, 132 S. Ct. at 1384 (internal citations and quotations marks omitted).

14

During the plea bargaining stage of criminal proceedings, the second part of the *Strickland* analysis, the "prejudice" prong, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "By grossly underestimating [a defendant's] sentencing exposure . . . [counsel] breached his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable." *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (internal citations and quotations omitted).

In this case, Mr. Samson contends that Ms. Comstock read through the Plea Agreement quickly, skimming over much of the parts that she stated appeared to be standard language issued by the United States Attorneys' Office in this district. In order to take the plea and have the Court accept it and in order to receive acceptance of responsibility at sentencing, Ms. Comstock advised Mr. Samson that he must admit to the offense conduct under Count 1 of the Indictment. Ms. Comstock did not consider taking this case to trial, and therefore Ms. Comstock's advise in the plea context was ineffective, as Mr. Samson was foreclosed from one option in his decision-making process. Therefore, Mr. Samson's plea should be vacated.

## IV. CONCLUSION

The ground for habeas relief in this case involves a constitutional error in the proceedings relating to the imposition of the Armed Career Criminal Act at sentencing. This error concerning Mr. Samson's constitutional rights had a substantial and injurious effect on the proceedings, which entitles Mr. Samson to relief under 28 U.S.C. § 2255. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-

38 (1993). Mr. Samson is entitled to relief. Mr. Samson is also entitled to have his sentence vacated due to ineffective assistance of counsel. In addition, undersigned counsel requests that Mr. Samson be permitted to file a supplemental brief to assert any ineffective assistance of counsel claims he has that are in addition to the claims asserted in this Motion.

        Respectfully submitted,

        Anna Williams
        Assistant Federal Public Defender
        Western District of Arkansas

By:    /s/ *Anna M. Williams*
        Anna M. Williams ABN 2013224
        Assistant Federal Public Defender
        3739 Steele Blvd., Suite 280
        Fayetteville, Arkansas 72703
        Telephone: (479) 442-2306

        Counsel for Petitioner

CERTIFICATE OF SERVICE

      I, Anna M. Williams, Assistant Federal Public Defender for the Western District of Arkansas, hereby certify that on February 2, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which shall duly forward notice to Kenny Elser, Acting United States Attorney, Sydney Butler, Assistant United States Attorney, and Benjamin Wulff, Assistant United States Attorney, who are registered CM/ECF users. I mailed a file marked copy of this document by United States Postal Service to the following:

David Joseph Samson, Petitioner

                                                          /s/ *Anna M. Williams*
                                                           Anna M. Williams